**UNITED STATES, Appellee,**

v.

**Private First Class Jeffery D. STAMPER, 405–02–3715, United States Army, Appellant.**

**ACMR 9400252.**

U.S. Army Court of Military Review.

8 June 1994.

---

**1098**

For Appellant: Major Michael A. Egan, JAGC, Captain C.W. Royer, JAGC (on brief).

For Appellee: Colonel Dayton M. Cramer, JAGC, Major James L. Pohl, JAGC, Captain Glenn L. Kirschner, JAGC, Captain John G. Giovannelli, JAGC (on brief).

Before WERNER, LANE, and RUSSELL, Appellate Military Judges.

## OPINION OF THE COURT

LANE, Judge:

Pursuant to his pleas, the appellant was convicted by a military judge sitting as a general court-martial of three specifications of conspiracy to commit larceny, failure to repair, eight specifications of willfully damaging private property, and eight specifications of larceny, in violation of Articles 81, 86, 109 and 121, Uniform Code of Military Justice, 10 U.S.C. §§ 881, 886, 909 and 921 (1988) [hereinafter UCMJ]. He was sentenced to a bad-conduct discharge, confinement for eighteen months, forfeiture of all pay and allowances, and reduction to Private E1. Pursuant to a pretrial agreement, the convening authority reduced the period of confinement to twelve months and approved the remainder of the sentence.

The appellant asserts on appeal, for the first time, that disparaging remarks made by his company commander while the appellant was pending action on these offenses amounted to unlawful command influence. The rationale for this claim is that the remarks discouraged potential witnesses from testifying on appellant's behalf. We hold that the appellant has failed to establish his new claim of command misconduct. We do, however, find that the commander's misconduct as it relates to illegal pretrial punishment was more egregious than found by the military judge.

### I. Defense Motions

At trial the defense moved for appropriate relief, in the form of credits against any sentence to confinement, for an eighty-day pretrial restriction. The defense first claimed that the restriction constituted restriction tantamount to confinement, entitling the appellant to a day-for-day credit.[1] The defense also claimed that certain aspects of the restriction amounted to illegal pretrial punishment and requested a three-for-one day credit. The factual predicate for the latter request included: (1) the alleged disparaging and insulting public remarks by the appellant's company commander throughout the period of the restriction and several months thereafter, and (2) the conditions of the restriction. The military judge found that the restriction was not tantamount to confinement, but he did find illegal pretrial punishment. He then awarded the appellant forty days of confinement credit based on a formula of one-half-day credit for each day of restriction. At no time was an issue as to unlawful command influence raised.

### II. Unlawful Command Influence

■ As evidence of alleged unlawful command influence, appellate defense counsel posits that the testimony of two staff sergeants and one specialist in extenuation and mitigation was "not indicative of the favorable evidence that would have been present-

---

1. If successful with this part of the motion, the defense also requested eighty days of credit for failure to comply with Rule for Courts–Martial

305 [hereinafter R.C.M.] procedures related to the review and approval of pretrial confinement.

ed" absent the commander's remarks. The appellant bears the burden of establishing his claim before the burden shifts to the government. *See United States v. Allen,* 33 M.J. 209 (C.M.A.1991); *United States v. Thomas,* 22 M.J. 388 (C.M.A.1986). We hold that he has not met this burden.

As in *Allen,* the appellant has offered nothing beyond mere speculation as to the impact of the commander's statements. In addition, we note that: (1) none of the disparaging remarks amount to an attempt to orchestrate who would appear as witnesses or what they would say (*see United States v. Cruz,* 25 M.J. 326, 329 (C.M.A.1987)), (2) the offending officer had left the unit two months prior to the appellant's trial and no allegation was made that the new commander made disparaging comments about the appellant, and (3) the testimony of the witnesses who did appear was highly favorable to the appellant.

### III.   Credit for Pretrial Punishment

■ In post-trial submissions to the convening authority, the trial defense counsel sought day-for-day credit for the entire period of restriction due to the illegal punishment. He argued that because this is the formula for illegal pretrial confinement credit, it should also be the formula for illegal pretrial punishment credit. However, no such formula has been established. It is usually sufficient if some allowance for prior punishment is made either in assessing or reassessing the sentence. *United States v. Villamil–Perez,* 32 M.J. 341, 344 (C.M.A. 1991) (no further action required as convening authority suspended twenty-three months' of forty-eight months' confinement); *Cruz,* 25 M.J. at 331 (new sentence hearing ordered); *United States v. Carr,* 37 M.J. 987, 992 (A.C.M.R.1993) (appropriate remedy is sentence reassessment); *United States v. Hatchell,* 33 M.J. 839, 843 (A.C.M.R.1991) (sufficient that convening authority "substantially reduced" sentence pursuant to pretrial agreement); *United States v. Moore,* 32 M.J. 774, 776 (A.C.M.R.1991) (sufficient that military judge considered illegal punishment in determining sentence, but court reassessed "in abundance of caution"); *United States v. Russell,* 30 M.J. 977, 979 (A.C.M.R.1990) (ap-

proved day-for-day credit for illegal pretrial punishment).

In the landmark case concerning this issue, the Court of Military Appeals stated that "[t]he remedial rule allowing for administrative credit for illegal pretrial confinement . . . was not framed in concrete. Instead, the concern . . . [is] that the remedy . . . be effective." *United States v. Suzuki,* 14 M.J. 491, 493 (C.M.A.1983). Airman Suzuki had been detained in an Army confinement facility in Korea during which time he was commingled with and treated the same as sentenced prisoners. The military judge, because of the "unusually harsh circumstances" of Suzuki's pretrial confinement, had assessed a three-for-one day credit. The convening authority, upon the advice of his staff judge advocate, had only approved a day-for-day credit in his action. The court overruled that action and reinstated the three-for-one day credit, stating that the convening authority "has no power to ignore a ruling by the military judge and unilaterally act on his own. . . ." *Id.; see United States v. Ware,* 1 M.J. 282 (C.M.A.1976). The court upheld the military judge's action on the grounds that Suzuki had suffered pretrial punishment in violation of Article 13, UCMJ. *Suzuki,* 14 M.J. at 493 (citing *United States v. Johnson,* 19 U.S.C.M.A. 49, 41 C.M.R. 49 (1969) and *United States v. Nelson,* 18 U.S.C.M.A. 177, 39 C.M.R. 177 (1969)).

Clearly, a convening authority—and this court—has no power to increase an adjudged—or approved—sentence. UCMJ art. 66(c); R.C.M. 1107(d); R.C.M. 1203(b) discussion. Reducing credit ordered by a military judge against an adjudged sentence, as in *Suzuki,* does amount to increasing the sentence. On the other hand, in exercising our power under Article 66(c) to affirm only an appropriate sentence, we can reduce the severity of the sentence. This is normally done through reassessment. *United States v. Sales,* 22 M.J. 305 (C.M.A.1986); *Carr,* 37 M.J. 987. However, the form of reassessment is a matter within our discretion. *See Sales,* 22 M.J. at 308 ("Court of Military Review will determine that a sentence it proposes to affirm will be 'appropriate' ").

In the stipulation of fact accompanying the motion in this case, the parties set out in detail the commander's conduct toward the appellant. On a routine basis in company-size formations, during details, and at the appellant's work area, Captain (CPT) Steven W. Decato, the appellant's company commander, made disparaging remarks to and about the appellant. "Don't go out stealing car stereos this weekend," "don't go looking at car lots at night," "watch your stuff on your desk, Stamper's here," "getting any five finger discounts lately Stamper?" and "go ask Stamper where it is if its [sic] 'lost'" were typical of CPT Decato's comments. On one occasion, the appellant met CPT Decato and his family at the Ramstein base exchange; CPT Decato's only comment was to ask the appellant what he intended to steal. This conduct not only occurred during the period of the restriction (9 July 1993 to 27 September 1993) but continued until the commander's reassignment in December 1993, a total period of 145 days. In all candor, the stipulation does point out that the appellant,

> was not the only recipient of such disparaging remarks. Anyone who CPT Decato was displeased with was subjected to this habit of CPT Decato to say disparaging remarks, but to a much lesser extent.... These remarks caused undue embarrassment for the recipients and stigmatized them in a company with over 100 soldiers assigned to it.

This behavior is offensive, not only because it is by one who would bear the title of "leader," but because it also violates due process of law. *Nelson*, 39 C.M.R. at 181. In making his findings, the military judge stated:

> I do find ... aspects of the restriction amounted to pretrial punishment in violation of Article 13 ... specifically the failure to provide the accused with an escort on more than one occasion, as well as the

demeaning remarks by the commanding officer. *If nothing else these remarks chipped away at the accused's presumption of innocence.*

(Emphasis added.) General Crosbie E. Saint[2] said it best in a policy letter to his command following an incident wherein a brigade-level commander publicly humiliated soldiers by a public and demeaning apprehension.

> The presumption of innocence is one of the principles our Armed Forces exist to defend. The apprehension of soldiers ... in any manner designed to humiliate, ridicule or harass them is inconsistent with that principle and will not be tolerated.
>
> ....
>
> Unnecessary public identification of an apprehended person as a criminal suspect [is prohibited].

*Cruz*, 25 M.J. 331 n. 3.

We find the company commander's conduct totally inexcusable;[3] we also find the military judge's remedy inadequate to apprise the command and the individual of that fact. We will correct this in our decretal paragraph by a reassessment of the sentence in the form of a reassessment of the credit against the sentence to confinement.

The findings of guilty and the sentence are affirmed. In lieu of the credit granted by the convening authority, the appellant will be granted 145 days' credit toward his approved sentence to confinement.

Senior Judge WERNER and Judge RUSSELL concur.

---

2. At the time, he was a major general and a division commander. He subsequently served as Commander-in-Chief, U.S. Army, Europe.

3. Potentially, his conduct could also be criminal, as oppression or maltreatment of one subject to orders is an offense under Article 93, UCMJ.